## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## ALEXANDRIA DIVISION

| | |
|---|---|
| **JUDITH ANN HUTHNANCE ROZIER** | **CASE NO.  1:19-CV-00577** |
| **VERSUS** | **JUDGE SUMMERHAYS** |
| **PRUDENTIAL INSURANCE CO OF AMERICA ET AL** | **MAGISTRATE JUDGE PEREZ-MONTES** |

### MEMORANDUM RULING

The current matters before the Court are (1) the Motion to Remand [ECF No. 32] filed by Plaintiff Judith Ann Huthnance Rozier ("Plaintiff"), (2) Defendant Malcolm Dale Harrington's Rule 12(b)(6) Motion to Dismiss [ECF No. 28] (the "Harrington Motion to Dismiss"); and (3) the Cross-Motion Seeking Interpleader Relief and Dismissal with Prejudice (the "Prudential Interpleader Motion" [ECF No. 56]) filed by The Prudential Insurance Company of America ("Prudential"). Magistrate Judge Perez-Montes issued a Report and Recommendation ("R&R") regarding the Motion to Remand on July 17, 2020 and the parties have now responded to the R&R. For the following reasons, the Court DENIES the Motion to Remand [ECF No. 32]. The Court further GRANTS the Harrington Motion to Dismiss [ECF No. 28] and GRANTS IN PART and DENIES IN PART the Prudential Interpleader Motion [ECF No. 56].

### I.
#### BACKGROUND

This case was originally removed from Alexandria City Court, Rapides Parish, Louisiana. Plaintiff filed her petition (the "Complaint") in City Court on March 15, 2018, and asserted claims

individually and as the Independent Executrix of the Succession of John S. Rozier, IV (the "Rozier Succession").[1] Plaintiff asserted claims against both Prudential and Harrington as defendants.[2]

The Magistrate Judge's R&R sets out the pertinent facts of the case: Plaintiff married John Rozier ("Rozier") on September 12, 1970 and they lived together as husband and wife until Rozier's death on November 5, 2018.[3] Rozier was a Certified Public Accountant ("CPA") who worked with Harrington from November of 1982 until June 30, 2005.[4]  Rozier was insured under a group policy issued by Prudential through the American Institute of Certified Public Accountants ("AICPA") Trust (the "Trust").[5] The Trust offered Rozier group life insurance benefits (the "Policy") in the amount of $50,000.00 (the "Death Benefit"), with premium payments to be made monthly by the partnership established by Rozier and Harrington, known as "Rozier & Harrington" (the "partnership").[6] Plaintiff alleges that the partnership made monthly premium payments for group life insurance on behalf of Rozier since November of 1984, and that the partnership continued to make payments as "Rozier, Harrington, & McKay" after the addition of Mark S. McKay ("McKay") as a partner.[7]  Plaintiff alleges that the partnership also made monthly premium payments on behalf of Harrington until his withdrawal as a partner on June 30, 2005.[8] The partnership continued making monthly premium payments to the Trust until Rozier's death on November 5, 2018.[9]

---

[1] ECF No. 1-1 at 5.
[2] *Id.*
[3] *Id.*
[4] *Id.*
[5] *Id.* at 6.
[6] ECF No. 1-1 at 6.
[7] *Id.*
[8] *Id.*
[9] *Id.* at 7.

Plaintiff's counsel notified Prudential of Rozier's death and was informed by Prudential that Plaintiff was not the beneficiary listed in the file; Prudential also allegedly refused to provide the name of the beneficiary.[10] Plaintiff contends that Prudential ultimately provided her with a copy of a Group Insurance Enrollment and Record Card ("Enrollment Card") dated November 15, 1984; this Enrollment Card identified Harrington as the beneficiary.[11] Plaintiff alleges that the "Signature of the Individual to be Insured" was not Rozier's handwriting, and that the name and address of the beneficiary were written in Harrington's handwriting.[12] Because the copy of the Enrollment Card was a poor copy, Plaintiff submitted sworn evidence to Prudential's claims examiner requesting a legible copy to be examined by a forensic document examiner.[13] On March 11, 2019, Plaintiff's counsel received a letter from Prudential stating that the record keeper and Prudential did not have the original Enrollment Card signed by Rozier.[14] Prudential also advised that, absent a court order, it would release the funds after 15 days to the listed beneficiary.[15] Plaintiff alleges that on June 30, 2005, the Trust was notified that Harrington withdrew from the partnership and that coverage was no longer available to him.[16] Plaintiff contends that when Harrington withdrew from the partnership, all right, title, and interest in insurance proceeds terminated.[17]

Plaintiff alleges that Rozier never designated Harrington as a beneficiary of the policy.[18] Alternatively, Plaintiff argues that Rozier and Harrington made a "mutual mistake" in that they did not intend for Harrington to benefit more than 13 years after he withdrew from the

---

[10] *Id.*
[11] *Id.* at 8; *see also* ECF No. 51-1 at 110.
[12] ECF No. 1-1 at 8.
[13] *Id.*
[14] *Id.* at 9.
[15] *Id.*
[16] *Id.* at 11.
[17] *Id.*
[18] *Id.*

partnership.[19] Plaintiff requests that the Policy and Enrollment Card be reformed to name Plaintiff as beneficiary, either individually, or in her capacity as Independent Executrix of the Rozier Succession.[20]

Prudential removed the case on May 3, 2019, asserting federal question jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 1132.[21] Prudential contends that the group life insurance policy (G-51377) (the "Policy") at issue is an employee welfare benefit plan governed by ERISA, and that ERISA preempts any state law claims and provides the exclusive administrative and federal remedies for resolution of claims relating to ERISA plans.[22] Prudential contends that Plaintiff's causes of action fall within the scope of ERISA § 502(a)(1).[23] Prudential answered the Complaint and asserted a Counterclaim and Cross Claim in Interpleader, seeking to deposit the Death Benefit with the Court and be dismissed.[24] Plaintiff amended her Complaint (the "Amended Complaint"), asserting causes of action for reformation of contract, enrichment without cause, payment of a thing not due, and statutory payments under La. R.S. 22:901.[25]

Plaintiff seeks a declaratory judgment that Rozier did not sign the enrollment card designating Harrington as beneficiary, that Rozier did not designate Harrington as the beneficiary, and that she, either individually or as executrix, is the sole beneficiary of the Policy.[26] Alternatively, Plaintiff seeks a declaratory judgment reforming the enrollment card to delete Harrington as the beneficiary and ordering that the proceeds due under the Policy be delivered to Plaintiff.[27] Plaintiff and Harrington, respectively, answered Prudential's Counterclaim in

---

[19] *Id.*
[20] *Id.*
[21] ECF No. 1 at 2.
[22] *Id.* at 3.
[23] *Id.*
[24] ECF No. 7.
[25] ECF No. 19.
[26] ECF No. 19 at 14.
[27] *Id.* at 15.

Interpleader.[28] Harrington answered the Complaint and Amended Complaint.[29] Plaintiff now moves to remand the case on the grounds that the insurance policy at issue is not an "employee benefit plan" under ERISA.[30]

Magistrate Judge Perez-Montes issued his R&R addressing the Motion to Remand on July 17, 2020. The R&R concludes that the plan at issue was governed by ERISA and that Plaintiff's claims are therefore completely preempted by ERISA. Accordingly, the R&R recommends that the Court deny the Motion to Remand. Plaintiff has filed an objection to the R&R. In addition, the Harrington Motion and the Prudential Interpleader Motion are presently before this Court. The resolution of these Motions, however, are closely tied to the recommendations of the R&R.

## II.
### LAW AND ANALYSIS

### A.    Federal Court Jurisdiction and ERISA Preemption.

Federal courts are courts of limited jurisdiction and possess only the jurisdiction granted by Article III of the Constitution and conferred by statute.[31] District courts have original jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States."[32] "[A] cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law."[33] A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."[34]

Here, Plaintiff purportedly asserts state law claims. Ordinarily a case asserting only state law claims does not fall within the subject matter jurisdiction of a federal court and cannot be

---

[28] ECF Nos. 11, 13.
[29] ECF Nos. 14, 21.
[30] ECF No. 32.
[31] *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).
[32] 28 U.S.C. § 1331.
[33] *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987).
[34] 28 U.S.C. § 1441(a).

removed. An exception to that rule is "[w]hen a federal statute wholly displaces [a] state-law cause of action through complete preemption."[35] ERISA is a key example of a federal statute that "wholly displaces" state law causes of action.[36] Thus, removal was proper if Plaintiff's claims against Prudential are completely preempted by ERISA.[37] The party invoking subject matter jurisdiction in federal court has the burden of establishing the court's jurisdiction.[38] Here, Prudential bears that burden. Subject matter jurisdiction must exist at the time of removal to federal court, based on the facts and allegations contained in the complaint.[39] "[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived."[40] The Court has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."[41] Jurisdictional facts are determined at the time of removal, not by subsequent events.[42] Remand is required "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction."[43]

## B. The R&R's Recommendation on the Motion to Remand.

The Court first addresses the Magistrate Judge's R&R and the recommendation that the Motion to Remand be denied. The R&R concludes that ERISA completely preempts Plaintiffs' claims and that the case was properly removed. As explained in the R&R, ERISA covers those

---

[35] *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 207 (2004) (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003)).

[36] *Id.*

[37] As explained by the Magistrate Judge, claims may be completely preempted or subject to "ordinary" or "conflict" preemption under ERISA. Conflict preemption exists when ERISA provides an affirmative defense to state law claims and involves ERISA § 514(a), 29 U.S.C. § 1144(a). *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 337 (5th Cir. 1999). Mere conflict preemption does not provide a ground for federal court jurisdiction. *Id.* As explained in the R&R and here, this case does not involve conflict preemption.

[38] *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F. 3d 1250, 1253-54 (5th Cir. 1998).

[39] *Id.* at 1253.

[40] *Arbaugh v. Y&H Corp.,* 546 U.S. 500, 514 (2006) (citing *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 583 (1999)).

[41] *Id.*

[42] *See La. v. Am. Nat'l Prop. & Cas. Co.*, 746 F.3d 633, 635 (5th Cir. 2014).

[43] 28 U.S.C. § 1447(c).

employee plans that qualify as welfare benefit plans, pension benefit plans, or both.[44] An employee welfare benefit plan is defined as any plan or fund established or maintained by an employer or by an employee organization, or by both, "for the purpose of providing for its participants or beneficiaries ... benefits in the event of sickness, accident, disability, [or] death."[45] Life insurance plans are included within the ambit of employee welfare benefit plans.[46]

The only contention here is whether the Policy "satisfies the primary elements of an ERISA employee benefit plan – establishment or maintenance by an employer intending to benefit employees."[47] The AICPA group insurance plan booklet (the "CPA Plan booklet")[48] describes the plan benefits. The CPA Plan booklet includes an ERISA Statement stating that the plan benefits provided by the Policy provide "insured benefits under your Employer's ERISA plan(s)."[49] The Policy provides employee term life coverage. The CPA Plan booklet provides that the covered classes are "[a]ll Employees classified as Proprietors, Partners, Firm Members, or Other Employees of Type E, G, H, I, J, K, L, M, or N Included Employers with less than 10 eligible Employees excluding Proprietors and Partners who enroll in Employee Term Life Coverage Schedule #2A."[50] The CPA Plan booklet defines "Employee" as "[a] person employed by the Included Employer; a proprietor or partner of the Included Employer. The term also applies to that person for any rights after insurance ends."[51]

The Magistrate Judge properly concluded that the Policy is an ERISA employee benefit plan. In fact, numerous other courts which have examined this specific policy have concluded that

---

[44] 29 U.S.C. § 1002(3).
[45] 29 U.S.C. § 1002(1).
[46] *Egelhoff v. Egelhoff*, 532 U.S. 141, 144 (2001).
[47] *See House v. American United Life Ins. Co., 499* F.3d 443, 448 (5th Cir. 2007) (citing *Meredith v. Time Ins. Co*., 980 F.2d 352, 355 (5th Cir. 1993)).
[48]  (ECF No. 51-1 at 1).
[49] ECF No. 51-1 at 42.
[50] ECF No. 51-1 at 3.
[51] ECF No. 51-1 at 33.

it is governed by ERISA.[52] Plaintiff continues to argue that the plan cannot be an ERISA plan as it was not governed by ERISA at its inception since the only two participants were the partners of the CPA firm themselves and no other employees.

However, as the Magistrate Judge correctly observes, an employee welfare benefit plan can qualify as an ERISA plan even if it is not an ERISA plan at its inception. 29 U.S.C. § 1002(1) defines "employee welfare benefit plan" and "welfare plan" as a plan "which was heretofore or is hereafter established **or** maintained by an employer…to the extent that such plan…was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise…" (emphasis added). That is precisely the case here: the sponsoring CPA firm added employees to the firm and the plan shortly after it adopted the plan.[53]

Another court has specifically noted the disjunctive nature of the statute: "[t]he statute uses the disjunctive word 'or,' requiring only that the plan either be 'established or maintained' as an ERISA plan. 29 U.S.C. § 1002(1) It does not require...that the plan must be established and continually maintained as an ERISA plan."[54] Another court faced a situation very similar to the present case and held:

> Thus, if the only two people covered by the plan are the owner and the spouse, the plan does not provide coverage to any "employees" and the plan falls beyond the reach of ERISA. *See Cristantielli v. Kaiser Found. Health Plan of Tex.,* 113 F.Supp.2d 1055, 1059–60 (N.D.Tex.2000) (Solis, J.) In this case, while the Corporation did purchase an individual disability policy for Plaintiff and his spouse, it also purchased disability insurance for another employee, Pat Lane. Because the Corporation purchased insurance for an employee in addition to Plaintiff and his spouse, the plan became an ERISA plan. *See Williams v. Wright*, 927 F.2d 1540, 1545 (11th Cir.1991) ("[A] plan covering only a single employee, where all other requirements are met, is covered by ERISA.")

[52] *See Fisher*, 842 F.Supp. at 399-401 ("The Court is satisfied that the Group Insurance Plan provided by AICPA constitutes a "plan" under 29 U.S.C. § 1002(1)."); *see also Woods v. Berry, Fowles & Co.,* CIV. 01-CV-37-B-C, 2001 WL 1602055, at *9 (D. Me. Dec. 14, 2001) ("I can only conclude that as a matter of law the AICPA plan established or maintained by Berry, Fowles & Co. is governed by ERISA.).
[53] *See* ECF Doc. 32-7 showing employee M McKay added in 1987, admitted in Plaintiff's Motion to Remand. (ECF Doc 32-7, pp. 2, 7.)
[54] *Nix v. United Health Care of Ala., Inc.,* 179 F. Supp. 2d 1363, 1369-1370, (M.D. Ala. 2001).

> Plaintiff also argues, without citing any legal authority, that ERISA does not apply because at the time the disability policy was established, Plaintiff was the sole insured. ERISA defines an "employee welfare benefit plan" as "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer ..." 29 U.S.C. § 1002(1). This language does not require that the plan be governed by ERISA at its inception. ERISA applies to any plan heretofore established or maintained; in other words, established or maintained "up to this time" by an employer to provide benefits to the employees. *See Nix v. United Health Care of Ala., Inc.,* 179 F.Supp.2d 1363, 1369–70 (M.D.Ala.2001) (discussing disjunctive nature of statute). In this case, the disability insurance at issue was initially established to provide coverage for Plaintiff only, and therefore was a non-ERISA plan at its inception. However, the Corporation subsequently added an employee to the plan. Thus, the disability plan was maintained as an ERISA plan once the employee was added, which was before the time Plaintiff filed his claim.[55]

Even if the plan was not an ERISA plan at its inception, it is still governed by ERISA if it is later "maintained as" an ERISA plan once non-partner employees are added. Furthermore, the relevant regulation, 29 C.F.R. § 2510.3-3(b), does not require that the plan cover an employee or participant at its inception since 29 C.F.R. § 2510.3-3(b) is worded in the present tense.[56]

The Magistrate Judge further concludes that Plaintiffs' state law claims are completely preempted by ERISA. Section 502(a) of ERISA completely preempts state law claims brought under an ERISA plan. Section 502(a)(1)(B) provides a civil action for benefits under the terms of a plan, to enforce or clarify rights to future benefits under a plan, or to enforce the terms of a plan.[57] Section 502(a)(3) provides for injunctive and equitable relief. Here, the Magistrate Judge concludes that Plaintiff's claims for reformation, enrichment without cause, and payment of a thing fall within section 502(a)(1)(B), and thus are completely preempted under section 502(a).[58] The

---

[55] *Kerans v. Provident Life & Acc. Ins. Co*., 452 F. Supp. 2d 665, 674–75 (N.D. Tex. 2005),
[56] *Bates v. Provident Life & Acc. Ins. Co.,* 596 F. Supp. 2d 1054, 1058 (E.D. Mich. 2009) (noting that the use of present tense was relevant).
[57] 29 U.S.C. § 1132(a)(1)(B)
[58] *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 337 (5th Cir. 1999) ("Section 502, by providing a civil enforcement cause of action, completely preempts any state cause of action seeking the same relief…")

Court agrees. ERISA preempts state law claims "that have the effect of orally modifying the express terms of an ERISA plan and increasing plan benefits for participants or beneficiaries who claim to have been misled." [59] Plaintiff's claims here seek to recover benefits and otherwise clarify or enforce rights under an ERISA plan. Specifically, she suggests that the beneficiary designation was forged or, in the alternative, Rozier and Harrington did not intend for the designation to benefit Harrington after Rozier's withdrawal from the partnership. As a result of these claims, she seeks equitable and monetary relief in the form of contract reformation and the recovery of benefits. These claims fall squarely within the scope of ERISA section 502(a) and are completely preempted.

In sum, the Magistrate Judge correctly ruled that the Policy is governed by ERISA and that section 502(a) of ERISA preempts Plaintiff's state law claims. [60] Because the Court has federal question jurisdiction over the case based on ERISA preemption, the Court adopts the Magistrate Judge's recommendation that the Motion to Remand be denied.

### C. The Harrington Motion to Dismiss.

The Court next addresses the Harrington Motion to Dismiss, which is based on complete preemption by ERISA. Because ERISA completely preempts Plaintiff's state law claims, those claims must be dismissed.[61] In opposing dismissal, Plaintiff argues that preemption does not bar her claims based upon the ERISA savings clause, which provides an exception to preemption with

---

[59] *Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.,* 904 F.2d 236, 245 (5th Cir. 1990) (citing *Lee v. E.I. DuPont de Nemours & Co.,* 894 F.2d 755, 758 (5th Cir.1990) and *Cefalu v. B.F. Goodrich Co.,* 871 F.2d 1290, 1295 (5th Cir.1989)).

[60] 29 U.S.C. § 1132(a)(1)(B).

[61] "If a state-law claim relates to an ERISA plan-whether asserted in state or federal court-ERISA supersedes state law and the claim must be dismissed." *Cardona v. Life Ins. Co. of N. Am.,* No. CIVA309-CV-0833-D, 2009 WL 3199217, at *3 (N.D. Tex. Oct. 7, 2009) (citing *Menchaca v. CNA Group Life Assurance Co.,* 331 Fed.Appx. 298, 2009 WL 2512859, at * 3-4 (5th Cir. Aug.18, 2009)).

regard to state laws that regulate insurance.[62] The Magistrate Judge correctly rejected this argument with respect to the Motion to Remand. Specifically, according to the Fifth Circuit:

> [A]lthough the savings clause preserves a role for certain state laws that regulate insurance, state claims that provide a separate vehicle for seeking benefits from an ERISA plan remain preempted as such claims must be brought under ERISA's civil enforcement provision (section 502). Otherwise the exclusivity and uniformity of that federal remedy would be undermined. *Davila*, 542 U.S. at 217–18, 124 S.Ct. 2488 ("ERISA § 514(b)(2)(A) must be interpreted in light of the congressional intent to create an exclusive federal remedy in ERISA § 502(a).").[63]

In this case, Plaintiff's claims all seek to collect the benefits from the Policy. While she makes her claims based upon a variety of legal arguments, they all seek the same ultimate outcome. The Court therefore finds that all of Plaintiff's state law claims are completely preempted by ERISA and must be dismissed. The Harrington Motion to Dismiss is GRANTED and all state law claims asserted by Plaintiff are DISMISSED.

### D. Prudential Interpleader Motion.

The Court turns next to the Prudential Interpleader Motion. Prudential seeks interpleader relief as follows: (1) that it be permitted to deposit the amount due from the Policy into the registry of the court; (2) that it be dismissed as a party; and (3) that it recover its attorney's fees. Both Plaintiff and Harrington consent to the first two requests for relief but oppose the request for attorney's fees.

Attorney's fees and costs may be awarded to an innocent stakeholder who successfully initiates a suit as an interpleader.[64] However, federal courts have declined to award attorney's fees in circumstances where (1) the expense of litigating matters of a certain type is or should be

---

[62] 29. U.S.C. §1144(b)(2)(A).
[63] *Swenson v. United of Omaha Life Ins. Co.*, 876 F.3d 809, 811–12 (5th Cir. 2017).
[64] *See Feehan v. Feehan*, No. 09 CIV. 7016 DAB THK, 2011 WL 497852, at *6 (S.D.N.Y. Jan. 10, 2011), report and recommendation adopted, No. 09 CIV. 7016 DAB, 2011 WL 497776 (S.D.N.Y. Feb. 10, 2011).

considered as part of the normal cost of doing business for an insurance company,[65] or (2) it would be inequitable as a matter of policy to force the beneficiary to bear the cost of the insurance company interpleading, either generally or when the stake is relatively small.[66]

Considering the record as a whole, the Court finds that both exceptions apply here given the size of the death benefit involved ($50,000) and the inequity in forcing Plaintiff to bear the cost of interpleading in light of the relatively small stake involved. Accordingly, the Court concludes that an award of attorney's fees and costs is not warranted. However, the Court will grant the remainder of the cross motion filed by Prudential. Accordingly, the Cross-Motion Seeking Interpleader Relief and Dismissal with Prejudice [ECF No. 56] is GRANTED IN PART and DENIED IN PART. Prudential is permitted to deposit the life insurance proceeds into the registry of the court and all claims against Prudential will be DISMISSED once those funds are received by the Court. Prudential's request for attorney's fees and costs is DENIED.

### III.
### CONCLUSION

For the foregoing reasons, the Court overrules the objection filed by Plaintiff and adopts the Report and Recommendation of the Magistrate Judge. The Motion to Remand [ECF No. 32] is therefore DENIED. Harrington's Rule 12(b)(6) Motion to Dismiss [ECF No. 28] is GRANTED and all state law claims against Harrington are DISMISSED. The Cross-Motion Seeking Interpleader Relief and Dismissal with Prejudice [ECF No. 56] is GRANTED IN PART and

---

[65] *See Travelers Indem. Co. v. Israel,* 354 F.2d 488, 490 (2d Cir. 1965); *see also Metro. Life Ins. Co. v. Mitchell*, 966 F. Supp. 2d 97, 105 (E.D.N.Y. 2013) ("[T]he Court adopts the view that '[c]onflicting claims to the proceeds of a policy are inevitable and normal risks of the insurance business. Interpleader relieves the insurance company of multiple suits and eventuates in its discharge. Accordingly [such actions are] brought primarily in the company's own self-interest.'); *Unum Life Ins. Co. of Am. v. Kelling*, 170 F. Supp. 2d 792, 796 (M.D. Tenn. 2001) ("...[C]ourts have found, on facts identical to those of the instant case, that insurance companies should not be compensated merely because conflicting claims to proceeds have arisen during the normal course of business.").

[66] *See Unum Life Ins. Co. of Am. v. Kelling*, 170 F. Supp. 2d 792, 796 (M.D. Tenn. 2001).

DENIED IN PART. Prudential is permitted to deposit the life insurance proceeds into the registry of the court and all claims against Prudential will be DISMISSED once the funds are received by the Court. Prudential's request for attorney's fees and costs is DENIED.

THUS DONE in Chambers on this 14th day of September, 2020.

Robert R. Summerhays
United States District Judge