UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

JUDITH ANN HUTHNANCE ROZIER      CASE NO.  1:19-CV-00577

VERSUS      JUDGE ROBERT R. SUMMERHAYS

PRUDENTIAL INSURANCE CO OF      MAGISTRATE JUDGE PEREZ-MONTES
AMERICA ET AL

## MEMORANDUM RULING

A bench trial in this matter was held on November 7, 2022. After hearing testimony and receiving evidence, the matter was taken under advisement. The parties subsequently submitted proposed findings of fact and conclusions of law.

## I.
### FINDINGS OF FACT

1.      This case was originally removed from Alexandria City Court, Rapides Parish, Louisiana. Plaintiff Judith Ann Huthnance Rozier ("Plaintiff") filed her petition (the "Complaint") in City Court on March 15, 2018, and asserted claims individually and as the Independent Executrix of the Succession of John S. Rozier, IV ("Rozier").[1] Plaintiff named Prudential Insurance Co. of America and Malcolm Dale Harrington ("Harrington) as defendants.[2]

2.      Plaintiff married Rozier on September 12, 1970, and they remained married until Rozier's death in 2018.[3] Both Rozier and Harrington were Certified Public Accountants (CPA), and formed a partnership in 1984 under the name of Rozier & Harrington.[4] The partners of Rozier & Harrington were members of the American Institute of Certified Public Accountants

---

[1] ECF No. 1-1 at 5.
[2] *Id.*
[3] ECF No. 105-15, Stipulations of Fact, ¶ 1.
[4] *Id.* at ¶ 2.

("AICPA").[5] Each partner of Rozier & Harrington took out a group life insurance policy in 1984, through a plan sponsored by AICPA.[6] Rozier was insured under a group policy issued by Prudential Insurance Company of America ("Prudential") through the AICPA Trust (the Rozier Policy").[7] Monthly premium payments for the Rozier Policy were made by Rozier & Harrington beginning in November 1984.[8] The AICPA group life insurance plan required that each participant provide a signed enrollment card stating the face amount of insurance coverage sought and designating a beneficiary.[9]

3.      Rozier and Harrington practiced together as partners of Rozier & Harrington and its successor firms until 2005.[10] Harrington was forced out of Rozier, Harrington & McKay (a successor firm to Rozier & Harrington) and sold his interest in the partnership in June 2005.[11]

4.      Rozier died on November 5, 2018.[12] Prudential could not locate the original 1984 enrollment card executed by Rozier, but instead relied on a copy of the original contained in its administrative file. This copy of the enrollment card named Harrington as beneficiary of the Rozier Policy and included a signature that appeared to be Rozier's signature.[13]

5.      As the administrator of the plan, Prudential contacted Harrington and requested that he complete a beneficiary form.[14] Harrington completed the requested form.[15] When Rozier died, Plaintiff became the Independent Executrix of the Succession of John Rozier. Plaintiff made a

---

[5] *Id.* at ¶ 3.
[6] *Id.* at ¶ 5.
[7] *Id.* at ¶ 4.
[8] *Id.* at ¶ 25.
[9] *Id.* at ¶ 6.
[10] *Id.* at ¶ 8.
[11] *Id.* at ¶ 9.
[12] *Id.* at ¶ 10.
[13] *Id.* at ¶ 7.
[14] *Id.* at ¶ 11.
[15] *Id.* at ¶ 12.

claim for the group life insurance policy benefits to Prudential.[16] Prudential determined that Harrington was the named beneficiary of the Rozier Policy and notified Plaintiff's counsel that Plaintiff was not the beneficiary listed on the 1984 enrollment card.[17]

6.      On March 15, 2019, Plaintiff filed suit in Alexandria City Court seeking to recover the insurance proceeds due under the Rozier Policy; she named Harrington and Prudential as defendants.[18] Neither Plaintiff nor Rozier's former CPA firm contacted Harrington concerning Plaintiff's claim prior to March 15, 2019.[19] The suit was removed to federal court under the Employee Retirement Income Security Act of 1974 ("ERISA").[20] The AICPA Group Life Insurance plan is an ERISA plan.[21] Prudential is the administrator of the group life insurance plan for the AICPA.[22] Plaintiff exhausted her administrative remedies under ERISA.[23] All state law causes of action asserted by Plaintiff were subsequently dismissed by this Court as preempted by ERISA.[24]

7.      Plaintiff contends that Rozier did not designate Harrington as beneficiary on the 1984 enrollment card,[25]and that the signature on the card was not Rozier's signature.[26] Specifically, at trial, Plaintiff testified that she did not believe that Rozier completed any of the sections of the 1984 enrollment card and that the signature on the card was not that of her husband.[27] She testified that she believed Harrington completed one section of the card and that

---

[16] *Id.* at ¶ 14.
[17] *Id.* at ¶ 26.
[18] *Id.* at ¶ 16.
[19] *Id.* at ¶ 13.
[20] *Id.* at ¶ 17.
[21] *Id.* at ¶ 18.
[22] *Id.* at ¶ 19.
[23] *Id.* at ¶ 20.
[24] *Id.* at ¶ 21.
[25] *Id.* at ¶ 23.
[26] *Id.* at ¶ 22.
[27] ECF. No. 108, Transcript p. 31.

someone else completed the other sections.[28] However, on cross-examination, she admitted that she was not absolutely certain as to whether one section of the enrollment card matched Rozier's handwriting.[29]

8.    Mark McKay, an accountant with Rozier's firm, testified on behalf of Plaintiff that he believed a portion of the handwriting on the enrollment card was that of Harrington.[30] McKay also testified that while the signature appeared to be Rozier's signature, it was "too big" and he therefore did not believe it was Rozier's signature.[31] On cross-examination, McKay was certain that the section containing the address of the beneficiary was in Harrington's handwriting.[32] However, when it was pointed out to McKay that Harrington's street address was spelled incorrectly on this portion of the card, he testified that he did not recall any instances when Harrington would have misspelled his own street name.[33] In addition, McKay had not initially realized that Harrington's first name—Malcolm—was misspelled on the section of the enrollment card that McKay identified as Harrington's handwriting; after that misspelling was pointed out to him, McKay reiterated his belief that Harrington had completed the enrollment card despite the misspelling.[34]

9.    Harrington, in turn, testified that he did not complete any portion of Rozier's enrollment card and pointed out that both his name and his street address were misspelled on the card.[35] He further testified that at least a portion of the handwriting appeared to be that of Rozier.[36] At one point during his examination, Harrington appeared to testify that the handwriting on a

---

[28] *Id.*, at p. 47.
[29] *Id.*, at p. 44-46.
[30] *Id.*, at p. 74.
[31] *Id.*
[32] *Id.*, at p. 83.
[33] *Id.*
[34] *Id.*, at p. 92.
[35] *Id.*, at p. 107.
[36] *Id.*, at p. 105.

portion of the enrollment card was his own handwriting; but he later corrected himself and explained that his earlier testimony was a misstatement and resulted from confusion.[37]

10.     Reba Harrington, the defendant's wife, testified that none of the handwriting on the enrollment card was Dale Harrington's writing and confirmed that both his name and their address were misspelled on the enrollment card's beneficiary section.[38] She testified that the signature on the enrollment card did not look like Harrington's handwriting or signature.[39]

11.     Darrelynn Richard, a bookkeeper at Rozier's former CPA firm, testified by deposition. She testified that the printing on the enrollment card "looks like [Rozier's] printing" with respect to the top portion of the card (containing the insured's name and address) and middle (beneficiary) section of the card.[40]  She testified that she had never known Harrington to misspell his own first name, but did know how to spell it herself because "they always called him Dale."[41] Finally, she testified that the bottom or signature section of the card looked like Rozier's printing and "looks similar to what the rest of the card looks like."[42]

12.     Finally, Susan Abbey was tendered and accepted by the Court as an expert forensic document examiner.[43] Ms. Abbey concluded that based upon her examination of the 1984 enrollment card, in comparison to other documents known to have been written and signed by Rozier, it was "highly probable" that the handwriting and signature on the enrollment card was that of Rozier.[44] She explained that, under the criteria and standards governing forensic document examiners, this was the highest and most definite opinion that she could give since the original

---

[37] The parties stipulated during the pretrial conference that Mr. Harrington was suffering from dementia and frequently became confused.
[38] *Id.*, at p. 177.
[39] *Id.*
[40] Exhibit J-14, p 13
[41] *Id.*
[42] *Id.*, at p. 14.
[43] Transcript, at p. 116.
[44] *Id.*, at p. 120-121.

enrollment card was not available for examination, and both the 1984 enrollment card and the exemplars were copies.[45] Ms. Abbey further concluded that it was "highly probable" that none of the handwritten text or the signature on the enrollment card was made by Harrington.[46]

13.     The Court finds that the 1984 enrollment card designating Harrington as the beneficiary of the Rozier Policy is valid and that the handwriting and signature on the card belonged Rozier. The Court does not find McKay's testimony that the handwriting on the card was Harrington's handwriting credible given the misspelling of Harrington's first name and street address. On the other hand, the Court finds Richard's testimony credible. She testified that the handwriting on the card appeared to be Rozier's handwriting and that the signature appeared to be Rozier's signature. The expert testimony of Ms. Abbey further supports the Court's finding that Rozier signed the 1984 enrollment card and designated Harrington as the beneficiary.

14.     The record reflects no evidence of mutual mistake on the part of Harrington or Rozier in connection with the Rozier Policy or the 1984 enrollment card.

## II.
### CONCLUSIONS OF LAW

1.     Plaintiff alleges that Rozier never designated Harrington as a beneficiary of the policy.[47] Alternatively, Plaintiff argues that Rozier and Harrington made a "mutual mistake" in that they did not intend for Harrington to benefit from the policy proceeds more than 13 years after he withdrew from the partnership.[48] Plaintiff requests that the Rozier Policy and the 1984 enrollment card be "reformed" to name Plaintiff as beneficiary, either individually, or in her capacity as Independent Executrix of the Rozier Succession.[49]

---

[45] Exhibit D-17B.
[46] Transcript, at p. 107.
[47] ECF No. 105-15, Stipulations of Fact, ¶ 26.
[48] *Id.*
[49] *Id.*

2.      The Court previously ruled that all state law claims asserted by Plaintiff were preempted by ERISA.[50] Nevertheless, Plaintiff argues that there are equitable grounds under state law to reform the beneficiary card.

3.      Under ERISA, "the plain language of the plan beneficiary designation form controls."[51] The Supreme Court has held that a claim for benefits "stands or falls by the terms of the plan, § 1132(a)(1)(B), a straightforward rule of hewing to the directives of the plan documents that lets employers establish a uniform administrative scheme, [with] a set of standard procedures to guide processing of claims and disbursement of benefits."[52] This rule is designed to make it easy and straightforward to identify the ERISA beneficiary.

4.      As the Court stated in *Kennedy*, "[t]he point is that by giving a plan participant a clear set of instructions for making his own instructions clear, ERISA forecloses any justification for enquiries into nice expressions of intent, in favor of the virtues of adhering to an uncomplicated rule: 'simple administration, avoid[ing] double liability, and ensur[ing] that beneficiaries get what's coming quickly, without the folderol essential under less-certain rules.'"[53] This rule applies even when the plan participant names a non-family member as a beneficiary to the exclusion of a surviving family member.[54]

_____

[50] ECF No. 80.

[51] *Duggins v. Fluor Daniel, Inc.*, 217 F.3d 317, 319 (5th Cir. 2000*); see also Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 304, 129 S. Ct. 865, 877, 172 L. Ed. 2d 662 (2009) (holding that even after the decedent and the named beneficiary were divorced, and the named beneficiary signed a divorce document purporting to waive her rights to any benefits, the ex-wife was entitled to the benefits under ERISA simply because the plan documents of an ERISA-governed policy control); *Flesner v. Flesner*, 845 F. Supp. 2d 791, 799 (S.D. Tex. 2012).

[52] *Kennedy*, 555 U.S.at 300 (internal quotations omitted) (citing *Egelhoff v. Egelhoff*, 532 U.S. 141, 148, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001); *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 9, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987)); *Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995) (ERISA's statutory scheme "is built around reliance on the face of written plan documents")).

[53] *Id.* at 301 (citing *Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown*, 897 F.2d 275, 283 (C.A.7 1990) (Easterbrook, J., dissenting)).

[54] *Duggins*, 217 F.3d at 319 ("Newsom has, by his choice of beneficiary, forsworn his child in favor of his attorney of some thirty-odd years. . . Newsom has every entitlement to dispose of his assets in accordance with his wishes . . . ."); *see also Walker v. CIGNA Ins. Grp.*, No. CIV. A. 99- 3274, 2000 WL 687738, at *1 (E.D. La. May 26, 2000) (Plan

5.      The Court has found that the evidence presented at trial establishes, by a preponderance of the evidence, that the 1984 enrollment card was valid and included the handwriting and signature of Rozier. The Court further found that, at the time of Rozier's death, the beneficiary card designated Harrington as the policy's beneficiary.

6.      As to Plaintiff's alternative claim that the enrollment card should be reformed, the Court concludes that there is no basis for that relief under ERISA. As the Court previously explained, the jurisprudence is clear that, in connection with an ERISA plan, "the plain language of the plan beneficiary designation form controls."[55] Plaintiff's argument essentially invites the Court to ignore this bright-line rule and correct a "mutual mistake" in the designation of an ERISA beneficiary based on mere speculation as to what the parties "would have wanted to happen" almost forty years ago. This argument is inconsistent with *Kennedy*, and Plaintiff has cited no authority allowing this relief under ERISA.

7.      Even if Plaintiff could show a basis under ERISA for reformation based on mutual mistake, the Court finds that there is no evidence in the record supporting Plaintiff's claim of mutual mistake. There is no evidence of any agreement between Rozier and Harrington as to the beneficiary designation; nor is there evidence that the parties contemplated how a partner's withdrawal from the partnership would affect a beneficiary designation. Rather, any claim of mutual mistake is based purely on *post hoc* speculation as to the parties' intent when the 1984 enrollment card was submitted.

participant named his non-spouse romantic partner as beneficiary on the enrollment form, even though the decedent was married to another woman at the time of his death.)
[55] *Duggins v. Fluor Daniel, Inc.*, 217 F.3d 317, 319 (5th Cir. 2000*).*

**III.**

**CONCLUSION**

Based on the Court's findings and conclusions, the Court rules that Plaintiff has failed to prove her claims by a preponderance of the evidence and that judgment should, therefore, be entered against her. Defendants are to submit a judgment reflecting the Court's ruling within thirty (30) days.

THUS DONE in Chambers on this 2nd day of May, 2023.


ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE